AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of ) <br> *(Briefly describe the property to be searched* <br> *or identify the person by name and address)* ) <br> ) <br> CELLULAR TELEPHONE ASSIGNED ) <br> CALL NUMBER 440-714-9800 ) <br> ) | Case No.   3:19MJ290 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| See Attachment C | |

The application is based on these facts:
See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation. See 18 U.S.C. §§3122(b), 3123(b).

☐ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Andrea R. Kinzig
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   5/19/19

City and state:  Dayton, Ohio

_____
*Judge's signature*

Sharon L. Ovington, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number 440-714-9800, whose wireless provider is Verizon.

## ATTACHMENT B

Pursuant to an investigation of an unknown male for violations of coercion and enticement, in violation of 18 U.S.C. § 2422(b); and kidnapping, in violation of 18 U.S.C. § 1201, this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

## ATTACHMENT C

Code Section                          Offense Description

18 U.S.C. §2422(b)                    Coercion and Enticement

18 U.S.C. §1201                       Kidnapping

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED CALL NUMBER 937-751-8710 | Case No.   3:19MJ290<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Andrea R. Kinzig, being duly sworn, depose and state the following:

### INTRODUCTION

1.  I make this Affidavit in support of an Application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number **440-714-9800, ("Target Cellular Device"),** which is described in Attachment A.

2.  I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been so employed since 2005. I am currently assigned to the Dayton, Ohio Resident Agency of the Cincinnati Field Office. In connection with my official duties, I investigate violations of federal criminal laws, including offenses pertaining to child exploitation and human trafficking.

3.  Along with other agents and officers of the Montgomery County (Ohio) Sheriff's Office and FBI, I am currently involved in an investigation of the possible kidnapping and/or sexual abuse of a 15-year old female child who will be referred to for purposes of this Affidavit as "Minor A". This Affidavit does not contain every fact known to the investigation, but only those deemed necessary to demonstrate sufficient probable cause to support the charges alleged in the warrant.

4.  One purpose of applying for this warrant is to determine with precision the **Target Cellular Device's** location. However, there is reason to believe the **Target Cellular Device** is currently located somewhere within this district based on location information that was previously collected from Verizon pursuant to an exigent circumstances / emergency disclosure request (pursuant to 18 U.S.C. §2701(b)(8) and 18 U.S.C. §2702(c)(4)). On May 19, 2019, Verizon provided the FBI with the location information for the **Target Cellular Device**, which included GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e.,

1

antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone. The location data identified that the telephone was located in Montgomery County, Ohio. Pursuant to Rule 41(b)(2), law enforcement officers may locate the **Target Cellular Device** outside the district provided the device is within the district when the warrant is issued.

5.    Based on the facts set forth in this affidavit, there is probable cause to believe that the following offenses have been committed, are being committed, and will be committed by the unknown individual who is presently with Minor A: coercion and enticement, in violation of 18 U.S.C. § 2422(b); and kidnapping, in violation of 18 U.S.C. § 1201. There is also probable cause to believe that the location of the **Target Cellular Device** will constitute evidence of those criminal violations, including leading to the identification of individuals who are engaged in the commission of these offenses and identifying locations where the target engages in criminal activity.

6.    Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

7.    On or around May 17, 2019, an adult male who will be referred to for purposes of this Affidavit as "Adult A" and an adult female who will be referred to for purposes of this Affidavit as "Adult B" reported to the Montgomery County Sheriff's Office that their 15-year old daughter, Minor A, was missing. The Montgomery County Sheriff's Office listed Minor A as a missing juvenile in the National Crime Information Center (NCIC).

8.    Another FBI agent and I subsequently spoke to Adult A and Adult B. In summary, Adult A and Adult B provided the following information:

   a.    Adult A saw Minor A on the evening of Thursday, May 16, 2019, at approximately 11:20 p.m. Minor A was not acting unusually at that time. Adult A woke up around 1:26 a.m. on the morning of Friday, May 17, 2019, and found that Minor A was missing. Minor A's personal belongings (such as her cellular telephone, toothbrush, hairbrush, etc.) were still at the residence despite Minor A's disappearance. Adult A and Adult B have not heard from Minor A since her disappearance.

   b.    Adult A, Adult B, and Minor A previously resided in Georgia. Minor A had run away from home on at least one occasion when they lived in Georgia.

2

c.      One of Minor A's friends who will be referred to for purposes of this Affidavit as "Minor B" told Adult A and Adult B that Minor A utilized a Snapchat[1] account with the account name of "rememberme7225".

d.      Adult A and Minor A's sister attempted to contact Minor A via the Snapchat account name of "rememberme7225". What appeared to be a male individual responded to the messages and indicated that he was with Minor A, he was trying to have a sexual relationship with her, and he would not allow Minor A to communicate with the family.

9.      On or around May 18, 2019, I conducted a brief interview of Minor B. In summary, Minor B provided the following information:

a.      Minor A had confided in Minor B that she (Minor A) had met a 22-year old man on the Bumble dating website (https://bumble.com). Minor A stated that she had been sneaking out of her house at night to have a sexual relationship with this man. Minor A did not provide the name or physical description of the man. It was Minor B's impression that Minor A met the man sometime in the past one to two weeks.

b.      Minor A told Minor B that she (Minor A) had obtained a new cellular telephone from Walmart, and that her parents were not aware of this telephone. Minor B did not know who purchased this cellular telephone.

c.      Within the past week, Minor A contacted Minor B via a new Snapchat account. The Snapchat account name was "rememberme7225". Minor A communicated with Minor B on this Snapchat account on a number of occasions before Minor A diappeared.

d.      After Minor A's disappearance, Minor B attempted to contact Minor A via the "rememberme7225" Snapchat account. Similar to Adult Male B's correspondence, what appeared to be a male individual responded to the communications and indicated that Minor A could not speak to Minor B.

10.     I have reviewed screen prints of some of the messages that Adult A, Minor A's sister, and Minor B exchanged with the "rememberme7225" Snapchat account when they attempted to contact Minor A. The information contained in the messages was consistent with the information provided by Adult A and Minor B (as detailed above). I also noted the following information:

---

1 Snapchat is a multimedia messaging application available on smartphones. One of the principal features of Snapchat is that pictures and messages are usually only available for a short period of time before they become inaccessible to their recipients.

a.  In the messages that Adult A exchanged with the "rememberme7225" account user, he posed as a friend of Minor A. When Adult A asked who he was talking to, the user stated "Someone from Georgia. But I'm smart enough to not give out ma name". When Adult A asked if the user was with Minor A, the user responded with the following: "No", "She's w some buddies of mine", She had a choice for who I could delt with", "Her or her crazy ass dad" . . . "She should be in Atlanta soon. But once my friends take care of her, I'll return her. Well she was worried about her dad".

b.  When Minor A's sister communicated with the "rememberme7225" account user, she inquired if her mother could pick up Minor A. The account user responded "No", "Not until I get her pregnant", "But if she wanna kome down after dat she xan kuh it will be easier".

c.  When Minor B exchanged messages with the "rememberme7225" account user, the user initially responded "*[Minor A's first name]* can't come to the phone right now." The user stated that Minor A was okay, but he then stated "Unless someone calls the cops, then someone getting hurt yo".

11.  On or around May 18, 2019, an FBI agent requested information from Snapchat for the "rememberme7225" account. Records provided by Snapchat in response to the request identified that the account was created on or around May 12, 2019, and was associated with telephone number 937-751-8710. Snapchat was able to provide geolocation information for the Snapchat account user. This geolocation information indicated that the user had been in various locations in or around Centerville, Ohio during the approximate time period of May 16, 2019 through May 17, 2019.

12.  Verizon was identified as the service provider for telephone number 937-751-8710. Location information was collected from Verizon pursuant to an exigent circumstances / emergency disclosure request (pursuant to 18 U.S.C. §2701(b)(8) and 18 U.S.C. §2702(c)(4)). During the time period of May 18, 2019 through May 19, 2019, Verizon provided the FBI with the location information for telephone number 937-751-8710, which included GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone. All of the data collected for this time period identified that the telephone was located in Montgomery County. The location information for telephone number 937-751-8710 is also consistent with some of the geolocation information provided by Snapchat for the "rememberme7225" Snapchat account.

13.  Verizon also provided incoming/outgoing call and text message details for telephone number 937-751-8710 for the approximate time period of May 12, 2019 through May 17, 2019. These records identified that the telephone number exchanged text messages with telephone number **440-714-9800 (Target Cellular Device)** on or around May 17, 2019

4

(the date that Minor A went missing). These text messages were the last messages that were exchanged on telephone 937-751-8710.

14.    Verizon was also identified as being the service provider for the **Target Cellular Device**. As detailed above, Verizon provided location information for the **Target Cellular Device** on May 19, 2019. This location information indicated that the device was in the same geographic location as telephone number 937-751-8710.

15.    Subscriber information was also obtained from Verizon for the **Target Cellular Device**. These records identified that the telephone number is subscribed to Justin Freeman at 920 Pimlico Drive, Apartment 2C, in Centerville, Ohio. This address is consistent with the location information for the **Target Cellular Device** and telephone number 937-751-8710. Also on May 19, 2019, an FBI agent observed a vehicle registered to Justin Freeman at the 920 Pimlico Drive address.

16.    Based on all of the information detailed above, I believe that the individual who is presently with Minor A and is using the **Target Cellular Device** and has committed the following violations:  coercion and enticement, in violation of 18 U.S.C. § 2422(b); and kidnapping, in violation of 18 U.S.C. § 1201

### Need for Additional Cellular Telephone Location Information

17.    As noted above, Verizon has provided the FBI with the location information for the **Target Cellular Device** on May 19, 2019.   While this information has been useful in providing information about the general whereabouts it has failed to identify the specific whereabouts of the **Target Cellular Device**.

18.    Based on my training and experience and from information provided to be from other agents trained in cellular telephone technology, I know that the degree of uncertainty associated with location information provided by cellular telephone providers is dependent upon a number of factors, including the number of cellular telephone towers in a particular area and features available on the cellular telephone device, among various others.  Much of the location information available provided for the **Target Cellular Device** and 937-751-8710 by Verizon has included a large degree of uncertainty – as much as in excess of one thousand meters.  Based on this large degree of uncertainty, the fact that officers are not specifically aware of identity of the individual who Minor A is with, officers have not been able to determine Minor A's specific whereabouts based on the current data provided by Verizon.

### MANNER OF EXECUTION

19.    In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a

communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

20. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the **Target Cellular Device** or receiving signals from nearby cellular devices, including the **Target Cellular Device**. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the **Target Cellular Device** and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the **Target Cellular Device** and use that information to determine the **Target Cellular Device**'s location, even if it is located inside a house, apartment, or other building.

21. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the **Target Cellular Device**, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the **Target Cellular Device**, and law enforcement will limit collection of information from devices other than the **Target Cellular Device**. To the extent that any information from a cellular device other than the **Target Cellular Device** is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the **Target Cellular Device** from all other cellular devices.

## AUTHORIZATION REQUEST

22. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

23. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cellular Device** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and [continue to] flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

6

24. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cellular Device** outside of daytime hours.

25. A search warrant may not be legally necessary to compel the investigative technique described herein.  Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Special Agent Andrea R. Kinzig
Federal Bureau of Investigation

SUBSCRIBED and SWORN
before me this __19th__ of May 2019

Sharon L. Ovington
UNITED STATES MAGISTRATE JUDGE

7